UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSE LEWIS,<br><br>      Petitioner,<br><br>vs.<br><br>LUIS MARSHALL, Superintendent, Sing Sing Correctional Facility,<br><br>      Respondent. | Case No. 9:08-CV-00339 (JKS) |

APPEARANCES:                                           OF COUNSEL:

    JESSE LEWIS
    04-A-1135
    Sing Sing Correctional Facility
    354 Hunter Street
    Ossining, New York 10562
    Petitioner, pro se

    ANDREW M. CUOMO                              Thomas B. Litsky
    Attorney General of the State of New York    Assistant Attorney General
    120 Broadway
    New York, New York 10271

BEFORE:

    JAMES K. SINGLETON, JR.
    Senior United States District Judge

**MEMORANDUM-DECISION AND ORDER**

    Jesse Lewis, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2004 judgment of conviction entered in the Ulster County Court on charges of criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the second degree, criminal sale of a controlled substance in the second degree (two counts), criminal possession of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the fourth degree.  Petitioner seeks relief on the grounds that:  (1) the convictions violated due process because the jury's verdict was not supported by sufficient evidence and was against the weight of the evidence; (2) admission at trial of hearsay

1

statements from a confidential informant violated the confrontation clause of the Sixth Amendment; (3) the trial court's failure to grant a mistrial after the prosecutor violated the court's *Sandoval* ruling deprived Petitioner of a fair trial; (4) the trial court's failure to suppress evidence violated Petitioner's Fourth Amendment rights; (5) admission of inaudible and incomplete audio tapes violated his right to a fair trial; and (6) shackling of Petitioner throughout his trial in the presence of the jury violated his right to a fair trial.  *See* Docket Nos. 1 (Pet.); 2 (Mem.).  The Government has filed a Response.  *See* Docket Nos. 9 (Response); 11 (Mem.).   Petitioner filed a  Traverse.  Docket No. 16.

## BACKGROUND

The Supreme Court of New York, Appellate Division, Third Department, briefly summarized the facts of the case:

> In 2002, the State Police Mid-Hudson Drug Enforcement Task Force was engaged in an undercover narcotics investigation in Ulster County and, in September of that year, defendant became a target of the investigation.  During the course of that investigation, from September 2002 through November 2002, State Police undercover officers and a confidential informant engaged in numerous conversations and drug transactions with defendant and codefendants, during the course of which many of the conversations between the confidential informant and defendant and an undercover officer and defendant were tape-recorded.
>
> At the conclusion of the investigation and following the execution of a search warrant at the premises where defendant resided, defendant was indicted and charged with criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the second degree, four counts of criminal sale of a controlled substance in the second degree and five counts of criminal possession of a controlled substance in the third degree.  Following defendant's unsuccessful attempt to suppress the use of the tape recordings and the evidence seized from his residence during execution of the search warrant, defendant was tried and convicted of the crimes of criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the second degree, two counts of criminal sale of a controlled substance in the second degree, two counts of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree.  Defendant was thereafter sentenced, as a second felony offender, to an aggregate prison term of 15 years to life.

*People v. Lewis*, 806 N.Y.S.2d 317, 319 (N.Y. App. Div. 2006).

Petitioner appealed the conviction arguing that:  (1) the verdict was against the weight of the evidence; (2) the admission of the confidential informant's statements violated the confrontation clause of the Sixth Amendment; (3) the trial court erred in denying him a mistrial after the prosecutor violated the trial court's *Sandoval* ruling; (4) the trial court erred in denying his

suppression motion; (5) the trial court erred when it admitted the partially inaudible and incomplete audio tapes.  Docket No. 10, Attach. 1.  The Appellate Division affirmed Petitioner's convictions in a reasoned opinion on January 5, 2006.  *Lewis*, 806 N.Y.S.2d at 320.  Petitioner sought leave to appeal to the New York Court of Appeals.  Docket No. 10, Attach. 5.  Petitioner abandoned his claim that the verdict was against the weight of the evidence, but otherwise raised the same arguments in his application for leave that he had raised before the Appellate Division.  *See id*. at 8-19.  The Court of Appeals denied leave to appeal without comment on July 14, 2006.  Docket No. 10, Attach. 6.

On July 17, 2006, Petitioner filed a motion pursuant to N.Y. Criminal Procedure Law ("C.P.L.") § 440.10 to vacate the judgment of conviction.  Docket No. 10, Attach. 7.  Petitioner argued that he was denied a fair trial when the trial court allowed him to remain shackled with leg irons throughout the trial without any justification.  *Id*.  Petitioner also argued that his trial counsel was ineffective for failing to object to the leg irons.  *Id*.  The county court denied the motion pursuant to C.P.L. § 440.10(2)(c), because Petitioner could have raised the issue on direct appeal and had unjustifiably failed to do so.  Docket No. 10, Attach. 10.  Leave to appeal to the Appellate Division was denied on January 31, 2007.  Docket No. 10, Attach. 12.

The instant petition followed, being timely filed on March 20, 2008.  Docket No. 1.

## LEGAL STANDARD

Because the instant petition was filed after April 24, 1996, any claim therein that was adjudicated by a state court on the merits is governed by the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001).  A decision is adjudicated "on the merits" when it finally resolves the claim, with res judicata effect, based on substantive rather than procedural grounds.  *Id.* at 311-12.  This is so, "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."  *Id*. at 312.

Under the deferential standard of review imposed by AEDPA, a writ of habeas corpus shall not be granted unless the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." *Id*. To qualify as "unreasonable," it must be objectively unreasonable, a substantially higher threshold than merely incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 127 S.Ct. 1933, 1939 (2007).

The Supreme Court has also explained that clearly established Federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. In the absence of a holding of the Supreme Court regarding the issue presented on habeas review, "it cannot be said that the state court unreasonably applied clearly established Federal law." *Carey v. Musladin*, 549 U.S. 70, 127 S.Ct. 649, 654 (2006) (internal quotation marks removed). Finally, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome. *Fry v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

In applying this standard, this Court reviews the last reasoned decision by a state court. *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). The Court presumes that the state court's findings of fact are correct, unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The presumption of correctness applies to findings by both state trial and appellate courts. *Whitaker v. Meachum*, 123 F.3d 714, 715 n.1 (2d Cir. 1997).

Claims that have not been adjudicated by a state court on the merits are reviewed *de novo* based on the record before the Court. *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003).

**DISCUSSION**

I - Insufficiency of the Evidence

Petitioner claims that his convictions violated due process because the jury's verdict was not supported by sufficient evidence and was against the weight of the evidence. Respondent contends this claim is unexhausted, procedurally barred and meritless.

"A petitioner satisfies the fair presentation aspect of the exhaustion requirement by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Claims are fairly presented to the New York Court of Appeals when the application for leave to appeal clearly states that all claims in the attached brief are being pressed or no arguments are made in detail but simply requests review of all issues outlined in the brief. *Jordan v. Lefevre*, 206 F.3d 196, 199 (2d Cir. 2000); *see also Morgan v. Bennett*, 204 F.3d 360, 369–90 (2d Cir. 2000). Where the application for leave to appeal refers to specific claims raised before the Appellate Division but omits mention of others, the unmentioned claims are deemed abandoned. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). Where the application for leave to appeal argues one or more specific claims but only makes a passing reference to possible other claims found in the attached briefs, the claims mentioned in passing have not been fairly presented to the Court of Appeals. *Jordan*, 206 F.3d at 198.

A claim that is now procedurally defaulted by state law "meets the technical requirements for exhaustion" because "there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *see also Grey*, 933 F.2d at 120. However, in such instances the petitioner must show "cause for the procedural default and prejudice resulting therefrom." *Grey*, 933 F.2d at 121 (citing *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986)).

Here, Petitioner clearly abandoned his claims concerning sufficiency and weight of the evidence when he omitted them from his application for leave to appeal. *See Grey*, 933 F.2d at 120;

*Jordan*, 206 F.3d at 198. However, these claims are technically exhausted because Petitioner cannot return to state court to raise them.[1] *See id*. As Petitioner has failed to allege or demonstrate cause for the default or prejudice therefrom, the Court cannot reach the merits. *See id*. at 121.

Even if these claims were not procedurally barred, the Court would find them meritless. First, the claim that the verdict is against the weight of the evidence is a state law claim that is not cognizable on federal habeas review. *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues"). Second, the record demonstrates that there was sufficient evidence against Petitioner to support the verdict. For each of the counts for which Petitioner was convicted, an undercover detective arranged the drug transactions with Petitioner either over the phone or in person. When the no-knock warrant was served at Petitioner's residence, Petitioner was seen dropping the marked currency from the last transaction onto the floor. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Appellate Division's determination that the jury's verdict was based on sufficient evidence was clearly a reasonable application of *Jackson*.

II - Confrontation Clause

Citing *Crawford v. Washington*, 541 U.S. 36, 54 (2004), Petitioner asserts that his Sixth Amendment right to confront the witnesses against him was violated when the trial court allowed an undercover detective to testify at trial to the out-of-court statements of a confidential informant. Specifically, Petitioner appears to be referring to out-of-court statements made by the confidential informant as part of drug transactions consummated on September 27, 2002, and October 3, 2002.

---

[1] Petitioner cannot again seek leave to appeal to the Court of Appeals because he has already used the one application allowed by N.Y. Court Rule 500.10(a). Petitioner is also barred from seeking collateral review because the issue could have been raised on direct review. C.P.L. § 440.10(2)(c).

Respondent submits the introduction of the hearsay was harmless and did not deprive Petitioner of a fair trial.

In *Crawford* the Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. 541 U.S. at 54. Although the Supreme Court in *Crawford* declined to provide an exhaustive list of what constitutes "testimonial" statements, it cited as examples: preliminary testimony, grand jury testimony, trial testimony, and statements made during police interrogations. *Id*. Violations of the confrontation clause are subject to harmless error analysis. *United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004) (citing *Coy v. Iowa*, 487 U.S. 1012, 1021 (1988)). Until recently, the Second Circuit has applied the "harmless beyond a reasonable doubt" standard when conducting harmless error analysis for violations of the confrontation clause. *See, e.g., United States v. Becker*, 502 F.3d 122, 130 (2d Cir. 2007). However, in light of the Supreme Court's clarification in *Fry*, the Second Circuit has recently held that in order to warrant habeas relief for a violation of the confrontation clause, a Petitioner must show that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brinson v. Walker*, 547 F.3d 387, 395 (2d Cir. 2008) (quoting *Brecht*, 507 U.S. at 637).

Respondent argues that the Court need not decide whether the admission of the informant's out-of-court statements violated *Crawford*, because their admission was harmless under *Brecht*. The Court will accordingly assume that admission of the statements violated the confrontation clause and apply harmless error analysis.

   *1. September 27, 2002*

Investigator Powell testified at Petitioner's trial that he was part of a task force that began investigating Petitioner in the fall of 2002. Reporter's Transcript ("RT") at 53-54. Powell testified that on September 27, 2002, a confidential informant that was working with him called Petitioner and arranged to buy an ounce of crack cocaine for $1,100. RT at 55-58. Powell and the informant drove to a McDonald's parking lot, which the informant said Petitioner had identified for the transaction. RT at 58. Matt Howard showed up with the drugs at the drop instead of Petitioner. RT at 58-59. Powell told Howard that he believed Howard was delivering less than the full ounce of

crack requested. RT at 59. Powell told Howard that he was not going to buy less than the full amount and that he should call Petitioner. Howard made a phone call from Powell's car. RT at 59-60. At the conclusion of the call, Howard left in the direction of Petitioner's residence. RT at 60-61. Ten minutes later, Howard returned with the correct amount of drugs, which Powell purchased for $1,100. RT at 61-62.

The Appellate Division addressed Petitioner's argument on direct review and found that the hearsay was admissible because it was *res gestae*. Respondent does not argue that *res gestae* is an acceptable exception to the rule under *Crawford*; rather he argues that the error was harmless under *Brecht* because Petitioner was acquitted of the counts charging criminal conduct from September 27, 2002. The Court agrees. Given that the jury acquitted Petitioner of the conduct alleged to have occurred on September 27, 2002, the Court cannot find that the statements of the confidential informant regarding the drug transaction on that date had a substantial and injurious effect or influence in determining the jury's verdict.

*2. October 3, 2002*

Powell testified that on October 3, 2002, the confidential informant again arranged for Powell to buy an ounce of crack cocaine from Petitioner for $1,100. RT at 64. They were going to meet "same as last time," but the informant convinced Petitioner to meet with Powell in person. RT at 65-66. Powell parked in front of Petitioner's residence and the informant went inside. RT at 67. Approximately 15 minutes later, the informant emerged with Petitioner and they both got into Powell's car. RT at 68. The informant introduced Powell and Petitioner and a fifteen-minute conversation ensued. RT at 69-70. After sizing each other up for a few minutes, Powell told Petitioner that he normally drove to New York City to pick up 40 grams of cocaine at a time for $1,200. RT at 70. Petitioner said he could match the deal and save Powell the drive. RT at 70-71. At the end of the conversation Powell "ordered up another ounce of crack for eleven hundred dollars." RT at 72. The informant accompanied Petitioner back into Petitioner's residence. Powell saw Petitioner exit the residence, walk around behind the building, and return inside. RT at 73-74. The informant emerged a few minutes later with an ounce of crack cocaine. RT at 74. After weighing the crack, Powell gave the informant $1,100. The informant went back inside Petitioner's

residence. When he returned, he told Powell that he had given the money to Petitioner.[2] RT at 74. Petitioner's counsel unsuccessfully objected to admission of the informant's statement that he had given the money to Petitioner. RT at 74.

The Appellate Division found this statement was inadmissible but harmless in light of the overwhelming evidence of Petitioner's guilt. *Lewis*, 806 N.Y.S.2d at 320. This Court cannot say that the Appellate Division's determination was an unreasonable application of clearly established federal law. Powell worked out the transaction face-to-face with Petitioner. The informant went inside Petitioner's residence with Petitioner. Powell saw Petitioner make a quick trip behind his building and back inside. The informant reemerged a few minutes later with the agreed upon ounce of crack cocaine. The informant was sent back inside the residence with $1,100, which he no longer possessed when he returned to the car. Lastly, when officers served the no-knock warrant on November 14, 2002, Petitioner was seen holding the marked currency that Powell had given to Howard shortly before in exchange for another 40 grams of crack cocaine.

While the Court assumes the admission of the informant's statement violated *Crawford*, such admission was harmless as it did not have a substantial or injurious effect or influence on the determination of the jury's verdict.

III - Failure to Declare a Mistrial

Petitioner argues that the trial court erred when it failed to declare a mistrial. After the close of evidence, counsel for Petitioner moved for either a limiting instruction or a mistrial on the grounds that the prosecutor had violated the court's *Sandoval* ruling during cross-examination of the Petitioner.[3] Respondent argues that the prosecutor's conduct did not deprive Petitioner of a fundamentally fair trial. The Appellate Division did not specifically address this contention in its decision, but found that all the unaddressed claims were without merit. *Lewis*, 806 N.Y.S.2d at 320.

---

[2]The informant was searched to ensure he had neither money or drugs both before and after meeting with Petitioner. RT at 73.

[3]Under *People v. Sandoval*, a defendant is entitled to a hearing in advance of trial to determine whether the prosecutor may make use of prior convictions to impeach the defendant's credibility. 34 N.Y.2d 371 (1974).

Petitioner essentially argues that a mistrial was required because of prosecutorial misconduct. A writ of habeas corpus will not issue for prosecutorial misconduct unless the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)); *see also Carr*, 424 F.3d at 227. "In order to be entitled to habeas relief, [a petitioner] must demonstrate that he suffered actual prejudice because the prosecutor's comments . . . had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994) (citing *Brecht*, 507 U.S. at 636). In determining whether such prejudice exists, a district court examines the totality of the circumstances, including "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Bentley*, 41 F.3d at 824-25.

At the *Sandoval* hearing in this case, the trial court found that the prosecutor would be allowed to impeach Petitioner with the fact of a prior felony conviction. RT 384-85. Petitioner testified on direct examination that he had been convicted of felony assault as a result of an altercation with an intoxicated individual who had been using profanity and the "N" word. RT 282-83. He pled guilty and was sentenced to 6 months' incarceration and 5 years of probation. RT 283. Petitioner further testified that he was found to have violated his probation for failing to maintain steady employment. RT 283-84.

On cross-examination, the prosecutor questioned petitioner about the underlying felony assault conviction. With no objection, the prosecutor asked petitioner whether his assault victim owed him money for drugs, and whether he beat him in connection with a drug deal. Petitioner responded that was not true. RT at 304-05. The prosecutor subsequently questioned petitioner about the reason for his violation of probation. Petitioner stated that "the only reason that it said on the violation of probation paper there, [was] for not having employment" RT at 316. Following

petitioner's answer, an unrecorded bench conference outside the hearing of the jury with petitioner present was held.  RT at 316.  The following colloquy then occurred:

> Q. In fact, part of that violation of probation included sexually abusing an under age child?
>
> A. No, sir.
>
> Q. No sir?
>
> A. Yes, sir.
>
> Q. Were you charged with such an offense?
>
> A. Not for -- not at that period of time for no violation of probation.  I never was charged with that offense.
>
> Q. What year were you charged with that offense?
>
> A. I never was charged with no sexually abusing child.

RT at 316.  After petitioner confirmed his name and date of birth, the colloquy continued:

> A. You're telling this jury that you have never been charged with sexually abusing a child?
>
> Q. I was never arrested for sexual abuse?
>
> A. Okay, well, would you care to correct me there before we leave a bad impression?
>
> MR. SCHINDLER: Objection, Judge.
>
> THE COURT: Sustained.  The jury will disregard.
>
> Q. Were you charged with endangering the welfare of a child?
>
> A. Yes, I've been charged before, yes, but I was off probation.  I already came home from serving my year in the Ulster County Jail.
>
> Q. So that happened after you did your time?
>
> A. Yeah, after I already did my probation violation time.

RT at 317.

After the close of evidence, Petitioner's counsel asked the court for either a limiting instruction or a mistrial on account of the prosecutor's questioning on cross-examination.  The prosecutor argued that Petitioner had opened himself up to the questions by testifying on direct about the circumstances leading to the conviction and the violation of probation.  The trial court

agreed as to the assault conviction, but found that the prosecutor had gone beyond "where we should have gone" with respect to the violation of probation. RT at 385. The trial court therefore instructed the jury that:

> You also heard about certain aspects of his violation of probation, specifically, for his not being employed, the sexual abuse of child, the endangering the welfare of a child and perhaps some other reasons. Any of the specific reasons for the violation of probation are not evidence and should not be given any consideration by you nor should you speculate as to any of the reasons for the violation of probation.

RT at 492-93.

Where, as here, the state court has rejected a claim on the merits without specifically discussing the claim, this Court must focus its review on whether the state court's ultimate conclusion was an unreasonable application of clearly established federal law. *Sellan*, 261 F.3d at 311-12. Given the totality of the circumstances, including the curative instruction, the Court cannot find that the Appellate Division's denial of this claim was an unreasonable application of clearly established federal law. While the prosecutor's question regarding allegations of sexual abuse apparently went beyond what the trial court had authorized, the trial court handled any potential prejudice by sustaining the contemporaneous objection and giving a curative instruction. Given the collateral nature of the prosecutor's questioning and the presumption that the jury followed the court's instructions,[4] the questioning simply did not so infect the trial with unfairness as to make the resulting conviction a denial of due process.

IV - Fourth Amendment Claim

Petitioner argues the trial court erred when it denied his motion to suppress evidence seized from the search of his apartment. Specifically, he alleges that warrant was issued without probable cause because the information relied upon was based on allegations from an unreliable confidential informant. Respondent submits this claim is not cognizable on habeas review. The Court agrees.

The law is well-settled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that

---

[4]*See Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987).

evidence recovered through an illegal search or seizure was introduced at trial. *Stone v. Powell*, 428 U.S. 465, 482 (1976). The Second Circuit has made it clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983). In order to receive habeas review of his Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place, but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and is insufficient to give this Court authority to review Fourth Amendment claims. *Id.*, 975 F.2d at 72.

In this case, Petitioner's motion to suppress was heard on December 11, 2003. Docket No. 10, Attach. 14. The trial court denied the motion after the hearing. *Id*. Petitioner challenged the failure to suppress on direct appeal. Docket No. 1. The Appellate Division affirmed the trial court's denial of the motion to suppress. *Lewis*, 806 N.Y.S.2d at 319-20. Petitioner has alleged neither that the state lacked corrective procedures nor that there was an unconscionable breakdown in the underlying process. Having received an opportunity for full and fair litigation of his claim in state court, his Fourth Amendment claim is not cognizable on federal habeas review.

V - Admission of Inaudible Audio

Petitioner argues that admission of incomplete and inaudible audio tapes of phone conversations allegedly held between himself and Investigator Powell or the confidential informant violated his right to a fair trial. Respondent argues that this claim is both unexhausted and procedurally barred because Petitioner failed to raise his constitutional grounds in the state courts and is now barred from doing so. Respondent further argues the claim is without merit. The Appellate Division, presented with the question of whether the trial court made an error of state law by admitting the tapes, held that the tapes were properly admitted because they were not completely inaudible. *Lewis*, 806 N.Y.S.2d at 320.

"A petitioner satisfies the fair presentation aspect of the exhaustion requirement by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). A petitioner who does not cite "chapter and verse of the Constitution" may nonetheless "fairly present to the state courts the constitutional nature of his claim" through: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 194 (2d Cir. 1982). A claim that is now procedurally defaulted by state law "meets the technical requirements for exhaustion" because "there are no state remedies any longer 'available' to him." *Coleman*, 501 U.S. at 732; *see also Grey*, 933 F.2d at 120. However, in such instances the petitioner must show "cause for the procedural default and prejudice resulting therefrom." *Grey*, 933 F.2d at 121 (citing *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986)).

The Court has reviewed both Petitioner's appeal before the Appellate Division and his application for leave to appeal before the Court of Appeals. Petitioner's entire argument before the state courts is that the tapes, being partially incoherent and incomplete, were inadmissible under state law. At no time did Petitioner rely on federal or state cases employing constitutional analysis, or assert his claim in terms so particular as to call to mind a specific right protected by the Constitution. As the admission of partially incoherent tapes is not a fact pattern within the mainstream of constitutional litigation, the Court finds that Petitioner has never fairly presented his constitutional claim to the state courts. *See Daye*, 696 F.2d at 194. However, these claims are

technically exhausted because Petitioner cannot return to state court to raise them.[5] *See Grey*, 933 F.2d at 120. As Petitioner has failed to allege or demonstrate cause for the default or prejudice therefrom, the Court cannot reach the merits. *See id*. at 121.

VI - Shackling Claim

Petitioner argues that his right to a fair trial was violated when the trial court allowed him to remain visibly shackled in the presence of the jury throughout the trial without justification. He claims that the shackles on his legs were visible and audible to the jury when he sat at the defense table and when he was escorted to and from sidebar discussions and the witness stand. In his traverse, Petitioner adds that he mistakenly omitted his claim that trial counsel rendered ineffective assistance by failing to object to the shackles.[6] Respondent submits that Petitioner has failed to prove that the shackling was visible or that it was not justified.

Petitioner raised this claim for the first time before the county court in a motion pursuant to C.P.L. § 440.10. The county court denied the motion pursuant to C.P.L. § 440.10(2)(c), because Petitioner could have raised the issue on direct appeal and had unjustifiably failed to do so. Docket No. 10, Attach. 10. Respondent has expressly waived the procedural bar. Docket No. 11 at 42-43 n.15. As the state court clearly failed to address this claim on the merits, this Court reviews the claim *de novo* based on the record before it. *See Cotto*, 331 F.3d at 230.

"The Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2007). "[W]here a court, without adequate justification, orders the defendant to wear shackles that will be seen by the

---

[5]Petitioner cannot again seek leave to appeal to the Court of Appeals because he has already used the one application allowed by N.Y. Court Rule 500.10(a). Petitioner is also barred from seeking collateral review because the issue could have been raised on direct review. C.P.L. § 440.10(2)(c).

[6]Grounds raised for the first time in the traverse are not considered. *See* Rule 2(c) of the Rules Governing Section 2254 Cases ("[t]he petition must: (1) specify all the grounds for relief available to the petitioner").

jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The State must prove "'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.'" *Id*. at 635 (quoting *Chapman v. California*, 386 U.S. 18, 24 1967)).

Respondent first argues that Petitioner has failed to demonstrate that his shackles were visible to the jury. Respondent relies primarily on an affidavit from the assistant district attorney who prosecuted Petitioner's case. The prosecutor averred that: "It is my recollection that at counsel's request defendant's handcuffs were removed, and defendant was always present in the courtroom before the jury entered and remained until the jury had left before he was removed. ¶ It is pure speculation on defendant's part that jurors could hear or heard his shackles, or could see, or saw them." Docket No. 10, Attach. 8 at 2. Petitioner argues that his shackles were visible when he shuffled to and from the witness stand to testify and to and from the bench for sidebar conferences. Although the transcripts of both *voir dire* and trial are devoid of any mention of Petitioner's shackles, the transcripts support Petitioner's contention that he attended bench conferences and took the stand in order to testify. *See, e.g.*, *Voir Dire* Transcript at 46; RT at 278-79, 316. The only logical inference that can be made from the intersection of the prosecutor's affidavit with the transcripts is that the jury saw Petitioner's shackles when he shuffled between the defense table and the bench and witness stand.

Finding that Petitioner was visibly shackled does not normally end the inquiry. A trial court may determine, in the exercise of its discretion, that visible shackles are justified in the specific instance because of, *inter alia*, potential security problems or the risk of escape during the trial. *Deck*, 544 U.S. at 629. Respondent argues that Petitioner has failed to establish that his shackling was not for a legitimate reason. Respondent is correct that is incumbent upon the Petitioner to prove his habeas claim by a preponderance of the evidence. *Whitaker v. Meachum*, 123 F.3d 714, 714 (2d Cir. 1997) (*per curiam*); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997). However, where the record fails to show that the trial court has "taken account of the circumstances of the particular case," a due process violation has been shown. *See Deck*, 544 U.S. at 632. Contrary to Respondent's position, Petitioner need not seek evidence outside the trial record to show that

something that should be in the trial record did not happen.  The trial court in this case may have conducted the required analysis and made the decision to permit the shackling justified by a state interest specific to Petitioner's particular trial.  However, the record's silence in this case indicates otherwise, and the Court finds that Petitioner has carried his burden.

Respondent has not alleged that the shackling error in this case, beyond a reasonable doubt, did not contribute to the verdict obtained.  Given the arm's-length nature of the drug transactions in this case and that Petitioner testified contrary to Investigator Powell, the Court cannot say beyond a reasonable doubt that the visible shackling of Petitioner in this case did not contribute to the verdict obtained.

## CONCLUSION

Petitioner's first five grounds are either procedurally barred or without merit.  However, Petitioner has demonstrated that his due process rights were violated when the trial court permitted him to remain visibly shackled at trial without justification.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Petitioner's application for writ of habeas corpus is **GRANTED**; and

2. Unless the People of the State of New York retry Petitioner Jesse Lewis within a reasonable time, consistent with New York speedy trial requirements, of the date the judgment in this case becomes final, *i.e.*, no longer open to attack on direct appeal, Respondent must release Petitioner Lewis from custody.

3. The Clerk shall enter judgment accordingly.

Dated this the 6th day of March 2009.

/s/ James K. Singleton, Jr.
**JAMES K. SINGLETON, JR.**
United States District Judge